WOOD *v.* GRAND LODGE OF BROTHERHOOD OF RAILROAD TRAINMEN.

4-3851

Opinion delivered May 13, 1935.

922

*Roy Gean,* for appellant.

*Tom J. McGrath* and *Warner & Warner,* for appellee.

HUMPHREYS, J. Appellant brought suit against appellee in the circuit court of the Fort Smith District of Sebastian County on the 21st day of June, 1934, for benefits of $100 per month for ten months, a total of $1,000, alleged to be due him out of the tuberculosis fund created and maintained by appellee society with dues of twenty-five cents per month collected and to be collected from its members. It was alleged in the complaint that appellee was entitled to the sum claimed under the constitution, the general rules, and the special rules governing the tuberculosis department of said society by reason of having contributed monthly to the fund, and by reason of suffering from chronic and incurable tuberculosis.

Appellee filed an answer denying all liability.

The cause was submitted to the trial court, sitting as a jury, under an agreed statement of facts, which resulted in a judgment dismissing appellant's complaint, from which is this appeal. The agreed statement of facts, omitting certain sections of the constitution and general rules, and some thirty sections applicable to the tuberculosis fund, is as follows:

"The defendant, Brotherhood of Railroad Trainmen, is a voluntary, unincorporated, fraternal, beneficiary association, and is an organization having a lodge system with a ritualistic form of work and representative form of government. Defendant has no capital stock, and is organized for the mutual benefit of its members and not for profit. It is primarily a labor union, having certain benevolent benefit-features, operating under the laws of the State of Ohio, with its headquarters at Cleveland, Ohio. Defendant has now, and at all times since its organization has had a constitution and general rules by which it and all of its members are governed and controlled.

"On September 1, 1922, the tuberculosis department of defendant came into existence, and certain rules governing and controlling same were regularly adopted, said rules being first printed by defendant in its constitution and general rules effective September 1, 1928.

"At the 4th Tri-Annual Convention of the defendant, held at Cleveland, Ohio, May 12th to June 5th, inclusive, 1925, there was a discussion of the 1922 resolution creating the tuberculosis department and fund of defendant. A committee of nine delegates were authorized, by a resolution duly and regularly adopted, to determine the future hospitalization policy of defendant's tuberculosis department. This committee reported to said convention as follows:

"'Your committee believes that a time limit should be fixed for the hospitalization of our tubercular members, and recommends that commencing September 1, 1925, that such hospitalization be limited to a period of three years.'

"Said report was adopted by said convention.

"In January, 1923, tuberculosis members of defendant were first hospitalized under the rules of said tuberculosis department.

"On February 2, 1908, plaintiff made application to defendant for a beneficiary certificate, Class C, $1,350, which was the designated amount for Class C at that time. On May 4, 1908, certificate Class C, No. 200231, was executed and delivered to plaintiff by defendant, and accepted by him, granting to him all benefits accruing to plaintiff in said Class C, as provided in defendant's constitution, by-laws, rules and regulations then in force, or which might thereafter be adopted by defendant.

"Upon the inauguration of said tuberculosis department by defendant, plaintiff participated in said tuberculosis fund. On February 12, 1923, plaintiff was first hospitalized by defendant under the provisions of said rules of said tuberculosis department when he was admitted to Hendricks-Laws Sanitorium at El Paso, Texas, where he remained until June 17, 1923, when he left same upon the advice and with the permission of the physicians in charge of said institution. On August 13, 1923, plaintiff

was re-admitted to said Hendricks-Laws Sanitorium, where he remained until December 15, 1924, when he again left same upon the advice and with the permission of the physicians in charge. On January 9, 1925, plaintiff was again re-admitted to said Hendricks-Laws Sanitorium, where he remained until November 16, 1925, when he again left same upon the advice and with the permission of physicians in charge. On January 17, 1926, plaintiff was again re-admitted to said Hendricks-Laws Sanitorium, where he remained until October 1, 1928, when he was transferred from said sanitorium to St. Joseph's Sanitorium in El Paso, Texas. On June 24, 1929, plaintiff was discharged from said last-named sanitorium for home treatment allowance.

"On January 29, 1929, plaintiff made application to defendant for a benevolent claim under plaintiff's said certificate, Class C, No. 200231, and said constitution and general rules of defendant, on account of pulmonary tuberculosis. His said claim was allowed by defendant on May 23, 1929, and defendant paid to plaintiff $1,875, being the full amount then designated by the constitution and general rules for said Class C, and plaintiff accepted same, surrendered his said certificate to defendant and it was cancelled.

"After plaintiff was discharged from said sanitorium for home treatment allowance on June 24, 1929, as stated above, he was regularly paid by defendant the sum of $100 per month, up to September 1, 1933.

"In August, 1933, defendant's medical director and grand lodge medical examiner, who had made investigation, concluded and were of the opinion that maximum benefit from hospitalization or home treatment had been attained by plaintiff, and made their recommendations to the beneficiary board that plaintiff be re-classified as having attained maximum benefit, and denied any further benefits from said fund. Upon consideration thereof said beneficiary board approved and accepted the said recommendations, re-classified plaintiff as having attained maximum benefit, and denied him any right to further benefits from said fund. It also directed defendant's secretary and treasurer to inform plaintiff of this action.

"Pursuant thereto, on August 23, 1933, defendant, acting by its duly authorized general secretary and treasurer, wrote to the plaintiff a letter, which was received by plaintiff, as follows, to-wit:

" 'The beneficiary board, in reviewing the medical reports in the T. B. file in your case, find that you have been receiving benefits from the tuberculosis fund since February 12, 1923, and to date there has been expended in your behalf $20,813.16, in addition to your claim which was paid in 1929, $1,875; therefore, this is to advise you that you will be discontinued from further benefits of this fund effective as of September 1, 1933, for the reason that the medical reports clearly indicate that you have received maximum benefit from hospitalization and home treatment.'

"The amount expended by defendant in behalf of plaintiff under said rules of its said tuberculosis department is as follows:

"Cost of Sanitorium care................................................$15,793.16
Cost of Home Treatment................................................ 5,020.00
"Total expense of said fund............................$20,813.16"

Appellant bases his right to recover on the constitution, general rules, and especially the rules relative to the distribution of the tuberculosis fund for the hospitalization and home treatment of such members as become afflicted with tuberculosis; construing them to mean that a member afflicted with tuberculosis has an absolute contractual right with the association to participate in said fund indefinitely according to classification. The rules, as we read and interpret them, make no provision whereby an afflicted member may obtain a vested right in the fund indefinitely. The fund is dispensed by a beneficiary board, selected for that purpose, on the recommendation of the medical director and lodge medical examiner. It is our view that the rules governing the tuberculosis department, irrespective of the class in which any member has been placed, leave it to the discretion of the grand lodge medical examiner and the beneficiary board to determine the further right of any afflicted member to participate in the fund. Under the rules and especially under rule 16, they may say when any afflicted member

has received the maximum benefits from hospitalization or home treatment irrespective of how classified theretofore. It should not be forgotten that appellee is a fraternal beneficiary association without capital stock, and not operated for profit but for the mutual benefit of its members. It follows that the tuberculosis department is operated for the mutual benefit of the afflicted members, and not for the benefit of a few of them. The fund created by nominal dues of the membership, only twenty-five cents each per month, cannot be classed otherwise than a "benefit fund" or a "gratuity." The fund is not dispensed in accordance with contracts between the association and the members, but by a beneficiary board to afflicted members on application according to classification recommended by a medical examiner. The classification of any member may be changed from time to time even to the extent of reclassifying the member as one who has received maximum benefits from the fund and, on this account, not entitled to longer participate in the fund. We hold that under these rules, no legal obligation was created whereby appellant may recover $100 per month indefinitely for home treatment. This ruling finds support in many authorities. *Banister* v. *Gray*, 261 N. Y. 445, 185 N. E. 695, and the cases cited therein. In the instant case, appellant is in no position to claim that the examiner or beneficiary board has dealt with him unjustly or arbitrarily, for he has been treated quite generously. In addition to having been paid, in 1929, $1,875 on an insurance certificate for disability on account of his disease, the tuberculosis department has expended a total on him out of the tuberculosis fund for sanitorium care and home treatment of $20,813.16.

The judgment is therefore affirmed.